UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-02349 JGB (SHKx)** | Date | November 29, 2018 |
|---|---|---|---|
| Title | ***Rosalie Vaccarino v. Aetna, Inc. et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 16); (2) REMANDING the Case to the Riverside Superior Court; (3) DENYING AS MOOT Defendants' Motion to Dismiss (Dkt. No. 14); and (4) VACATING the December 3 and December 10, 2018 Hearings (IN CHAMBERS)

Before the Court is Plaintiff Rosalie Vaccarino's ("Plaintiff") Motion to Remand. ("Motion," Dkt. No. 16.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion and REMANDS the case to state court.

## I. BACKGROUND

### A. Procedural Background

This case arises out of Defendants' alleged denial of coverage for chemotherapy to Plaintiff, a seventy-eight-year-old woman who suffers from cancer. (Motion at 6.) On September 21, 2018, Plaintiff filed a civil action in the Superior Court for the State of California, County of Riverside. ("Complaint," Dkt. No. 4-1.) On October 18, 2018, Plaintiff filed a First Amended Complaint in state court against Defendants Aetna, Inc. ("Aetna"), Aetna Health of California, Inc. ("AHCI"), and Regal Medical Group ("Regal") (collectively, "Defendants"). ("FAC," Dkt. No. 5.) The FAC contained three causes of action: (1) breach of contract, (2) breach of duty of good faith and fair dealing, and (3) negligence. (FAC at 1.) On October 31, 2018, Aetna, Inc.

and Aetna Health of California, Inc. ("Removing Defendants") filed a notice of removal in this Court. ("Notice," Dkt. No. 4.)

On November 2, 2018, Removing Defendants filed a motion to dismiss. ("MTD," Dkt. No. 14.) On November 6, 2018, Plaintiff filed the instant Motion.[1] Removing Defendants filed an opposition to the Motion on November 19, 2018 ("Opposition," Dkt. No. 28), and Plaintiff filed a reply in support of the Motion on November 21, 2018 ("Reply," Dkt. No. 20).

**B. Factual Allegations**

In August of 2017, Plaintiff was diagnosed with colon cancer. (Motion at 7.) At that time, she was a member of an Aetna health management ("HMO") plan,[2] under which Aetna was obligated to provide coverage only for medically necessary treatment. (Id.; Opp. at 3.) On September 26, 2017, Plaintiff underwent surgery to remove cancerous lymph nodes. (Motion at 7.) After the surgery, her surgeon and oncologist recommended chemotherapy. (Id.) Plaintiff alleges that Defendants denied her coverage requests on the basis that they were not medically necessary. (Id. at 8.) She further alleges that Aetna determined that chemotherapy was medically necessary and provided coverage for treatment only after she switched from her HMO plan to a preferred provider ("PPO") plan. (Id.) According to Plaintiff, "the four-month delay allowed cancerous tissue to grow back, causing irreversible physical injury and severe emotional distress." (Id.)

**C. Statutory Background**

The Medicare Act, 42 U.S.C. §§ 1395 et seq., established a federally subsidized health insurance program ("Medicare") for elderly and disabled persons. (Motion at 6; Opp. at 3.) The Secretary of Health and Human Services ("Secretary") administers Medicare through the Centers for Medicare and Medicaid Services ("CMS"). (Motion at 6; Opp. at 3.) Medicare consists of four main sections: Parts A and B, which provide traditional fee-for-service coverage; Part C (relevant here), which establishes the Medicare Advantage ("MA") program; and Part D, which provides prescription drug coverage. (Motion at 6; Opp. at 3.) Under the MA program, beneficiaries have the option to choose a private health insurance plan administered by a Medicare Advantage Organization ("MAO") (Motion at 6; Opp. at 3), like Aetna Health of California (Opp. at 3.). MAOs contract with CMS to provide MA plans to qualified beneficiaries. (Motion at 6; Opp. at 3.) "The Contract and CMS regulations provide the rules and considerations an MAO must follow in determining whether to allow benefits." (Opp. at 3, citing, e.g., 42 C.F.R. §§ 422.503; 422.504.)

---

[1] In the Motion, Plaintiff also requests that the Court order Defendants to pay Plaintiff's attorneys' fees incurred as a result of removal. (Motion at 19.)

[2] Removing Defendants state Plaintiff was a member of Aetna Medicare Advantage ("MA") plans at all relevant times (Opp. at 3). Plaintiff does not dispute that her Aetna HMO and PPO plans were MA plans.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Id. at § 1331.

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety, Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir.1996). See Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683-85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]"). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

## III. DISCUSSION

Removing Defendants assert two statutory bases for removal: (1) 28 U.S.C. § 1441(a) in conjunction with 28 U.S.C. § 1331, which together establish that actions arising under federal law may be removed to a federal district court, and (2) 28 U.S.C. § 1442(a)(1), which allows for removal of actions against federal officers. (Notice at 3, 5.) With regard to federal question jurisdiction, Removing Defendants specifically argue that the case arises under the Medicare Act. (Id. at 3.)

### A. Federal Question Jurisdiction

"If a civil action includes . . . a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of [28 U.S.C. § 1331]) . . . the entire action may be removed." 28 U.S.C. § 1441(c). Whether a claim arises under federal law for removal purposes is determined by the same "well-pleaded complaint rule" that restricts federal jurisdiction only to cases in which a federal question is presented on the face of the plaintiff's properly pleaded complaint. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392; Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998). "This rule makes a plaintiff the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law." Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1107 (9th Cir. 2000). Nonetheless, the Ninth Circuit has held

that "even a state law claim may 'arise under' the Medicare Act." Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1142 (9th Cir. 2010).

It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 14 (1983). "There does exist, however, a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine. The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law." Balcorta, 208 F.3d at 1107 (citing Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). When the doctrine of complete preemption is applicable, "any claim purportedly based on [a] preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. (citing Franchise Tax Bd., 463 U.S. at 24). "Complete preemption, however, arises only in extraordinary situations. The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 862 (9th Cir. 2003) (internal quotations and citations omitted).[3]

1. **Claims "Arising Under" the Medicare Act**

Here, Removing Defendants concede that Plaintiff does not invoke federal law in her FAC. (Notice at 3.) However, they argue that Plaintiff's state law claims still arise under the Medicare Act based on the rule set forth in Kaiser v. Blue Cross of California, 347 F.3d 1107 (9th Cir. 2003). (Notice at 5.) Under Kaiser, there are two circumstances in which a claim "arises under" the Medicare Act: (1) when claims are "inextricably intertwined" with a Medicare benefits determination, and (2) when both the standing and the substantive basis of the claim is the Medicare Act. Id. at 1112 (citing Heckler v. Ringer, 466 U.S. 602, 614-15 (1984)).[4] "Most

---

[3] "The United States Supreme Court has identified only three federal statutes that satisfy this test: (1) Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185; (2) Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132; and (3) the usury provisions of the National Bank Act, 12 U.S.C. §§ 85, 86." Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 862

[4] The Court notes that the Kaiser court interpreted the "arising under" language found in 42 U.S.C. § 405(h) for the purpose of determining whether the claims in question were subject to an administrative exhaustion requirement. 347 F.3d at 1111. It is not clear to the Court from the Kaiser opinion that the meaning of "arising under" for the purposes of 42 U.S.C. § 405(h) is necessarily the same as the meaning of the phrase for the purposes of 28 U.S.C. § 1331. Nonetheless, the Court finds support for the proposition that a claim "arising under" the Medicare Act necessarily "arises under" federal law for the purposes of § 1331 in the Ninth Circuit's decision in Ardary v. Aetna Health Plans, 98 F.3d 496 (9th Cir. 1996). There, the Court also assessed whether claims "arose under" the Medicare Act and were therefore subject to administrative review. Id. at 499. After determining that the state law claims did not "arise

courts forego the 'standing and substantive basis' test in favor of the 'inextricably intertwined' test where plaintiffs do not invoke Medicare in their complaints." Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan, 210 F. Supp. 3d 1225, 1232 (C.D. Cal. 2016). Both state law and federal law claims brought under different statutes can "arise under" the Medicare Act if they are "inextricably intertwined" with a Medicare benefits decision. Kaiser, 347 F.3d at 1113–15; see also Do Sung Uhm, 620 F.3d at 1142.

Plaintiff relies primarily on the Ninth Circuit's decision in Ardary v. Aetna Health Plans of California, Inc., which held that claims are not "inextricably intertwined" with the Medicare Act where the plaintiffs are "*at bottom* not seeking to recover benefits." 98 F.3d 496, 500 (9th Cir. 1996). In that case, the surviving husband and children of a Medicare beneficiary brought various state law claims against Aetna and the plan administrator, alleging that the plan administrator's failure to authorize an airlift to a more sophisticated medical facility resulted in the beneficiary's death. Id. at 497–498. There, the court pointed out, the decedent's death "[could not] be remedied by the retroactive authorization or payment of the airlift transfer." Id. at 500.

Removing Defendants argue that Ardary "stand[s] for the antiquated notion that a plaintiff can avoid Medicare preemption[5] simply by pleading damages aside from Medicare benefits." (Opp. at 9.) They rely primarily on the Ninth Circuit's more recent decisions in Kaiser and Do Sung Uhm. In Kaiser, the court rejected the plaintiffs' argument that "because they [sought] damages rather than Medicare payments, their claims [did] not arise under the Medicare Act." 347 F.3d at 1112. There, a Medicare provider sued Blue Cross and the federal

---

under" the Medicare Act, the court concluded, for that reason, that removal to federal court had been improper. Id. at 502. It thus remanded the case to the district court with instructions to remand the action to state court. Id.

[5] Removing Defendants conflate the defense of federal preemption with the analysis of whether a claim "arises under" the Medicare Act. Because preemption cannot constitute a basis for removal, Franchise Tax Bd. of Cal., 463 U.S. at 14, the Court disregards Removing Defendants' arguments regarding preemption except insofar as it understands them to refer to the question of whether the claims "arise under" the Medicare Act. The Court also notes that Ardary involved an appeal of a district court decision granting a motion to dismiss, which argued the plaintiffs' claims were preempted by the Medicare Act. In determining the preemption question, the Ninth Circuit assessed whether the claims "arose under" the Medicare Act. The court's reasoning on that issue is relevant here because it informs the Court's analysis of whether the claims here "arise under" federal law. See supra note 4. Because of the distinct procedural posture of this case, any discussion of preemption in Ardary is irrelevant, except insofar as it might bear on the applicability of the doctrine of complete preemption, see supra. However, Removing Defendants do not argue that complete preemption applies here. At no point in their Notice or Opposition do they mention complete preemption or cite any cases pertaining to the doctrine. Without deciding the issue, the Court notes the extremely high bar for establishing complete preemption. See supra.

government, alleging that Blue Cross's failure to reimburse the provider for Medicare services had forced it to declare bankruptcy. Id. at 1109. Removing Defendants characterize Kaiser as "tak[ing] a narrow view of" Ardary. (Opp. at 11.) While the court in Kaiser did limit the holding of Ardary, it did not render it so narrow as to exclude the facts of this case. Specifically, the court stated that "*Ardary* focused on claims 'against a private Medicare provider for torts committed during its administration of Medicare benefits' and the 'rights of patients.' Indeed, the *Ardary* analysis convinces us that its holding does not extend beyond patients and torts committed in the sale or provision of medical services." Id. at 1113 (quoting Ardary, 98 F.3d at 501).

Do Sung Uhm involved Medicare beneficiaries who attempted to enroll in a prescription drug plan through Humana. 620 F.3d at 1138. While premium payments for the plan were deducted from their Social Security checks, Humana failed to recognize them as plan members, and plaintiffs were thus forced to pay higher costs for their prescriptions. Id. at 1138–39. The plaintiffs argued that "because they [sought] return of their premiums, not reimbursement for benefits owed under [Medicare]," their claims did not "arise under" the Medicare Act. Id. at 1141. The court disagreed. Id. It distinguished Ardary, stating that its holding "that the wrongful death action did not 'arise under' the Medicare Act . . . [was] because it was '*at bottom* not seeking to recover benefits' and because the injury complained about could not have been redressed at all via the Medicare Act's administrative review process." Id. at 1142. The Uhms' claims, in contrast, alleged no "injury that could not be remedied through the retroactive payment of Medicare drug benefits." Id. at 1144.

The facts here most closely resemble the facts of Ardary. This case also involves harm to a patient, rather than a provider, allegedly arising from "torts committed during its administration of Medicare benefits." See Ardary, 98 F.3d at 501. "*At bottom*," Plaintiff is not seeking to recover benefits. See id. at 500. Her claimed injuries – "severe emotional distress and significant physical injury" allegedly caused by Defendants' denial of her requests for coverage of chemotherapy (Motion at 6) – more closely resemble the injury alleged in Ardary than those alleged in Kaiser and Do Sung Uhm. Moreover, these injuries cannot be remedied by the retroactive payment of benefits. Her claims are thus not "cleverly concealed claims for benefits." See Kaiser, 347 F.3d at 1112.

The Court is unconvinced by Removing Defendants' argument that Ardary is inapplicable because it "involved conduct incidental to the Medicare Coverage decision." (Opp. at 9.) Specifically, Removing Defendants argue that Ardary did not involve a "decision on the treatment itself," but "denial of a request for emergency air ambulance services." (Id., citing Ardary, 98 F.3d at 497–99.) The Ardary court characterized the claim in that case as one "seek[ing] . . . damages on the grounds that the provider . . . improperly denied emergency medical services[.]" Ardary, 98 F.3d at 499. Nothing in that decision or the subsequent decisions cited by Removing Defendants supports a distinction between coverage decisions

regarding payment for treatment and those regarding payment for transportation for the purposes of treatment.[6]

While subsequent cases have narrowed Ardary's holding, it is still good law, applies to the facts in this case, and controls. The Court must therefore conclude that Plaintiffs' claims are not "inextricably intertwined" with — and thus do not "arise under" — the Medicare Act. Accordingly, Plaintiff's claims do not "arise under" federal law for the purposes of § 1331. See id. at 502.

**B. Federal Officer Removal**

Removing Defendants also argue that removal is appropriate pursuant to 28 U.S.C. § 1442(a)(1), under which a state civil action may be removed to federal court by "any officer (or person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). An entity seeking removal under § 1442(a)(1) bears the burden of showing that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." Goncalvez v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1244 (9th Cir. 2017).

Federal officer removal is an exception to the general presumption against removal jurisdiction. This is so because the federal government can act only through its officers and agents, but it would be difficult for the government to find anyone to act on its behalf if it did not guarantee its officers and agents access to a federal forum. Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006) (citing Tennessee v. Davis, 100 U.S. 257, 263 (1880)). Therefore, "when federal officers and their agents are seeking a federal forum, [courts] are to interpret section 1442 broadly in favor of removal." Id. at 1252.

The "basic purpose" of federal officer removal is to prevent interference with the Federal Government's operations caused, for example, by a State's prosecution of federal officers and agents acting within the scope of their authority. Watson v. Philip Morris Cos., 551 U.S. 142, 150 (2007). It also serves to protect federal officers and agents from "local prejudice" against federal laws or officials and to ensure "federal officials a federal forum in which to assert federal immunity defenses." Id. "[T]he removal statute applies to private persons who lawfully

---

[6] Removing Defendants also argue that Ardary is inapplicable here because it was decided before the 2003 Medicare Amendments, 42 U.S.C. § 1395w-26(b)(3), which "added an explicit preemption clause over all state laws save for those dealing with licensing or plan solvency." (Opp. at 10.) Specifically, they argue that the Ardary decision was based on the absence of direction from the Supreme Court or Congress (id.), without which the court was forced to "begin with the strong presumption that Congress does not intend to pre-empt state law causes of action with a federal statute," Ardary 98 F.3d at 501. For the reasons stated supra note 5, the Court disregards this argument.

assist [a] federal officer in the performance of his official duty . . . [but] only if [the private parties] were authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." Id. (citations omitted) (internal quotation marks omitted).

### 1. "Acting Under" a Federal Officer

"The words 'acting under' [in § 1442(a)(1)] are broad, and . . . the statute must be liberally construed." Watson, 551 U.S. at 147. "For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1245 (9th Cir. 2017) (quoting Watson, 551 U.S. at 152). However, such help "does *not* include simply *complying* with the law," Watson, 551 U.S. at 152, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored," id. at 153. This is so because when a company complies with a regulatory order, "it does not ordinarily create a significant risk of state-court 'prejudice.'" Id. However, government contractors may come within the terms of the statute if "[t]he assistance [they] provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." Id. at 153. One factor courts consider in this analysis is whether the defendant was "perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." Id. at 154.

Removing Defendants argue they were "*assisting* and helping CMS *carry out* its duty to administer Medicare benefits." (Opp. at 14.) Both parties recognize that there exists no binding precedent on the question of whether MAOs administering Part C benefits are "acting under" CMS so that they are entitled to removal under § 1442(a)(1).[7] The Court thus looks for guidance to the Ninth Circuit's decision in Goncalves, 865 F.3d 1237. There, the court considered whether insurance carriers that administered a Federal Employee Health Benefit Act ("FEHBA") plan on behalf of the U.S. Office of Personnel Management ("OPM") "acted under" a federal officer in filing a subrogation lien on the potential settlement proceeds from a state court suit to recover benefits paid by the carriers under the plan. Id. at 1242–43, 1245. After a several-paragraph discussion of the relationship between OPM and FEHBA carriers (id. at 1245–46), the court wrote, "[o]f specific importance to this case, the contracts that OPM negotiates with private carriers . . . provide for . . . subrogation," id. at 1246. That is, OPM obligates carriers "to make a reasonable effort to pursue subrogation claims." Id. at 1247 (internal quotation marks omitted). The court concluded, "[i]n light of the interconnectedness between OPM and the [carriers], the [carriers'] obligation to pursue subrogation claims, and the

---

[7] Removing Defendants argue that the "majority rule" is that MAOs are "acting under" CMS when they administer Part C benefits, citing a recent Central District case, Inchauspe v. Scan Health Plan, No. 217CV06011CASJCX, 2018 WL 566790 (C.D. Cal. Jan. 23, 2018), (Opp. at 14) and several decisions from district courts across the country (Notice at 7). Plaintiff points out that many of these decisions are unreported. (Reply at 12.) Plaintiff relies primarily on an unpublished Sixth Circuit opinion, Ohio State Chiropractic Ass'n v. Humana Health Plan, Inc., 647 Fed. Appx. 619 (6th Cir. 2016), which reached the opposite conclusion.

vital federal interest in the pursuit of subrogation claims, we hold that the [carriers] 'act under' a federal officer when they pursue subrogation claims." Id.

Removing Defendants emphasize that they were "performing a government function *pursuant to a contract with CMS*." (Id. at 16.) In their description of the statutory scheme, they state that MAOs "are delegated the government's responsibility for administering [MA plans]" and "[t]he contract and CMS regulations provide the rules and considerations an MAO must follow in determining whether to allow benefits." (Opp. at 3.) They further argue that "[e]ven if MAOs have 'some discretion in resolving' medical necessity determinations, they are still 'simply performing a task that [CMS] would otherwise perform.'" (Opp. at 15, quoting Owens v. Health Care Service Corp., 2016 WL 7675406, at *5 (D. Mont. 2016).)

While Removing Defendants have provided a general description of the relationship between CMS and MAOs, they do not explain precisely how their contract with CMS or the statutory and regulatory framework bear on their coverage decisions. The Ninth Circuit's holding in Goncalvez was not (as Removing Defendants state it) simply that "FEHBA administrators act under OPM for the purposes of federal officer removal." (Opp. at 16.) It was that the carriers "'act[ed] under' [OPM] *when they pursue[d] subrogation claims*." Goncalvez, 865 F.3d at 1247 (emphasis added). The Court understands from Goncalvez's reasoning and holding that it must consider the degree of CMS's control over and the federal government's interest in *coverage decisions* specifically, not administration of MA plans generally.[8] Because Removing Defendants have not explained the nature of CMS's control over coverage decisions or elaborated on the government's interest in such decisions, they fail to meet their burden of showing that their actions were "taken pursuant to a federal officer's directions." See Goncalvez, 865 F.3d at 1244. Consequently, they fail to establish that removal is appropriate under § 1442(a)(1).[9]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand and REMANDS the case to state court for all further proceedings. Plaintiff's request for attorneys' fees is DENIED. Defendants' Motion to Dismiss is DENIED AS MOOT. The hearings set for December 3 and December 10, 2018 are VACATED. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

---

[8] The Court is not convinced, however, that Removing Defendants have the burden of making the even more specific showing "that Congress or CMS provided . . . statutory or regulatory directions to withhold chemotherapy to Plaintiff[.]" (Motion at 17.)

[9] Because the Court determines that Removing Defendants have not met their burden as to whether their actions were taken "pursuant to a federal officer's directions," it does not consider the remaining elements articulated in Goncalvez, 865 F.3d at 1244.